(No. 23235.—

W. A. NEFF, Appellee, *vs.* HARRY C. GEORGE, Appellant.

*Opinion filed October 14, 1936.*

STONE and WILSON, JJ., dissenting.

ALLEN, DALBEY & FOREMAN, A. B. DENNIS, S. V. JINKINS, and L. A. LOWENSTEIN, (EVERETT L. DALBEY, and RAY M. FOREMAN, of counsel,) for appellant.

ACTON, ACTON & BALDWIN, GUNN, PENWELL & LINDLEY, and FLEMING & HENDERSON, (W. M. ACTON, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

W. A. Neff and Harry C. George were the Republican and Democratic candidates, respectively, for the office of sheriff of Vermilion county at the election held on November 6, 1934. The canvassing board credited George with 17,289 votes and Neff with 17,232 votes and issued a certificate of election to George. Upon a re-count in an

election contest filed by Neff, the county court found that Neff received 16,923 votes and that George received 16,918 votes, and entered an order declaring Neff elected. The cause is here on George's appeal. A cross-appeal by Neff questions the correctness of certain rulings of the trial court.

The ballots counted by the judges of election which were initialed by one of them with the initials of another judge of election were excluded by the court upon the recount. Two hundred eighty-four of such votes were deducted from those cast for George and one hundred ninety-six were deducted from those cast for Neff, the result of which was a net gain of eighty-eight votes for Neff. The section of the statute relating to the initialing of ballots (State Bar Stat. 1935, chap. 46, par. 225; 46 S. H. A. 311;) provides: "One of the judges shall give to the voter one, and only one ballot, on the back of which such judge shall endorse his initials in such manner that they may be seen when the ballot is properly folded, and the voter's name shall be immediately checked on the register list." Some confusion has existed in the past as to what extent this section is mandatory, but in *Waters* v. *Heaton, ante,* p. 150, decided at the last term of this court, it is definitely settled that the provision is directory, only, and expressions to the contrary are overruled. The trial court therefore erred in excluding the ballots initialed by one election judge with the initials of another such judge.

Appellee urges that *Waters* v. *Heaton, supra,* overrules a long line of previous decisions of this court, and discusses at length the doctrine of *stare decisis.* While in arriving at our decision no specific reference is made to that doctrine, we were fully cognizant of it and of the fact that it is not universally applicable to all situations without exception. The doctrine has more or less force, according to the nature of the question decided. Stated in its general and simplest terms, the doctrine of *stare decisis* expresses the policy of the courts to stand by precedents and not to disturb settled

points. The general rule is, that decisions long acquiesced in, which constitute rules of property or trade or upon which important rights are based, should not be disturbed, even though a different conclusion might have been reached if the question presented were an open one, unless the evils of the principle laid down will be more injurious to the community than can possibly result from a change. (*Prall* v. *Burckhartt,* 299 Ill. 19; 7 R. C. L. 1001, 1009.) Stability and uniformity of decisions conduce so much to the public welfare and happiness, that when a rule of law has once been settled, contravening no statute or constitutional principles, it ought to be followed unless it can be shown that serious detriment is thereby likely to arise prejudicial to public interests. (*Heidenreich* v. *Bremner,* 260 Ill. 439; *Koch* v. *Sheppard,* 223 id. 172.) No court, we believe, has gone farther than this court to uphold the doctrine of *stare decisis,* but where it is clear that the court has made a mistake it will not decline to correct it although it may have been re-asserted and acquiesced in for a long number of years, especially if the former decisions are injurious or unjust in their operation. (*Prall* v. *Burckhartt, supra; Propeller General Chief* v. *Fitzhugh,* 53 U. S. 443.) Obviously, if a voter must see to it that the initials on his ballot were placed there by the judge whose initials it bears he must personally know the judge and see him initial the ballot. It is equally obvious that in large urban communities this would be practically impossible. At the penalty of disfranchisement it puts an unreasonable burden on the voter. Manifestly, perpetuating such a holding would result in greater harm to the voters of this State than correcting the error. Giving the doctrine of *stare decisis* what may be called a personal application, it cannot be relied upon by one who has not in good faith been deceived or misled to his prejudice by reliance upon a decision which the court subsequently concludes was erroneous. (7 R. C. L. 1002.) Appellee is in that position here. The initialing of the bal-

lots was something with which he had nothing to do. We adhere to our holding in *Waters* v. *Heaton, supra*.

Appellant questions the rulings in counting or excluding thirty-eight ballots on account of the manner in which they were marked by the voters. Ballot 5-XX had a cross in the Republican circle. Lines are drawn through a part of Neff's name and that of Meeks, a candidate for Congress. The lines were apparently made intentionally. This ballot was improperly counted for Neff. Ballot 22-XX was excluded on the ground that the lines in the cross in front of George's name do not intersect within the square. A close inspection shows an intersection within the square. The ballot should have been counted for George. Under former decisions of this court the rulings on the other thirty-six ballots were correct, and it could serve no good purpose to discuss them in detail.

We now consider the cross-errors assigned by Neff.

Ballot 1-V was rejected. It contained crosses in the Republican and Socialist circles. There were no county candidates on the Socialist ticket. The crosses in the circles nullified each other, but the ballot should have been counted for Neff.

On ballot 3-V the judge's first initial is difficult to decipher but the testimony identifies it. There is a cross in the Republican circle, and it should have been counted for Neff.

Ballots 1-MM and 4-MM contained figures on the back. As to the first, one of the election judges contradicted himself in his testimony but finally explained he put the number "14" on the back so he could tell the number he had ahead. We cannot say the trial judge was not justified in counting this ballot for George. As to the other ballot, the evidence does not disclose that any election official marked it, and it is not clear how it became marked with several figures. We think it should not have been counted for George.

Ballot 1-TT contained crosses in the Democratic and Republican circles and a cross in the square before the name of George. The ballot is stamped "Defective" and written on the back is "Spoiled." It was properly counted for George. *Isenburg* v. *Martin,* 293 Ill. 408.

Ballot 7-XX contains a cross in the Republican circle partially, but not entirely, erased. The cross distinctly shows. The ballot was excluded. It is difficult to ascertain the voter's intention. There were marks in squares before the names of six Republican candidates but not in that before the name of Neff. Under the circumstances we will not disturb the finding of the trial court.

Ballot 9-XX contains a cross in the Republican circle. Before the name of F. W. Ward is a double-lined cross extending much beyond the corners of the square, and on the end of each line was a small square figure which could have no meaning with respect to a logical marking of the voter's ballot. It was properly excluded.

Ballot 11-XX has several marks in the Democratic circle, but there is a cross, and the additional marks may be attributed to nervousness of the voter. It was properly counted for George. *Winn* v. *Blackman,* 229 Ill. 198.

Ballot 13-XX has a circle around the Democratic party circle and was properly excluded.

Ballot 14-XX contains crosses in the circles of the National Progressive, Prohibition, Socialist Labor and Socialist columns but none in the Republican or Democratic circles. After names where crosses appear, including that of Neff, there are check marks. The ballot was properly excluded.

Ballot 20-XX contains a cross in the Democratic circle. In other circles, except the Republican, crosses had been made and the word "No" is written in an apparent attempt to correct a mistake. The ballot was properly counted for George.

Ballot 23-XX has one distinct line and across it a part of a double line and the remainder a single line in the

square in front of the name of Neff. There is a complete cross in the square. The ballot was improperly excluded and should have been counted for Neff.

Ballot 4-AAA contains an imperfect mark, but there is one distinct line and another which merely intersects it, but close inspection discloses that there is a cross. The ballot was excluded but should have been counted for Neff.

Ballot 6-AAA was counted for George. The intersection in the square in front of his name is about the same as in 4-AAA, and the ballot was properly counted.

The errors in rulings on ballots 1-V, 3-V, 4-MM, 23-XX and 4-AAA reduce the erroneous net loss of George from ninety to eighty-five votes.

Appellee claims the trial court erred in excluding the votes of Joseph Johnson and his wife and of eight voters in the village of Muncie on the ground that they were not legal voters. The evidence was sufficient to justify the holding that Johnson and his wife had not been in the State one year and that the eight voters in Muncie had not been in the county ninety days.

Another cross-error urged by appellee is that seventy-three votes cast by voters from a transient camp in Danville, precinct No. 1, should have been excluded on the ground that such voters were not permanent residents and that twenty of them were not qualified voters. The evidence discloses that two of them voted the Republican ticket. This would reduce the number about which appellee might complain to seventy-one. If they were all deducted from George's vote it would not overcome the error in depriving him of eighty-five votes. There is no testimony to show how any of the seventy-one voted. If the votes were excluded as illegal, the rule is that the loss must be pro-rated between Neff and George in the proportions that the number of votes cast for each bears to the total votes cast in the precinct. (*McNabb* v. *Hamilton,* 349 Ill. 209; *Flowers* v. *Kellar,* 322 id. 265.) It is manifest that applying the

rule could not change the result—only the size of George's majority. It is therefore unnecessary to consider whether the court erred in refusing to exclude the votes from the transient camp. *Humphrey* v. *Perry,* 310 Ill. 373.

Other errors are urged by appellant, but, as the net result shows his election, it is unnecessary to discuss them.

The judgment of the county court is reversed and the cause remanded, with directions to enter an order and judgment in conformity with the views herein expressed and declaring appellant to have been elected to the office of sheriff of Vermilion county.

*Reversed and remanded, with directions.*

STONE and WILSON, JJ., dissenting.