(No. 82893.—

IRVING R. ZIMMERMAN, as Guardian for Scott E. Zimmerman, a Disabled Person, Appellee, v. THE VILLAGE OF SKOKIE *et al.*, Appellants.

*Opinion filed June 18, 1998.*

HARRISON and NICKELS, JJ., dissenting.

Hinshaw & Culbertson, of Chicago (Steven M. Puiszis and Bruce L. Carmen, of counsel), for appellants.

Gary P. Hollander, of Potratz & Hollander, P.C., of Chicago, for appellee.

Patricia T. Bergeson, Acting Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon and Timothy W. Joranko, of counsel), for *amicus curiae* City of Chicago.

Jeffrey Edward Kehl, of Dowd & Dowd, Ltd., of Chicago, for *amici curiae* IGAP *et al.*

Beth Anne Janicki, of Springfield, for *amici curiae* Illinois Municipal League *et al.*

Ancel, Glink, Diamond, Cope & Bush, P.C., of Chicago (David Lincoln Ader and Jeffrey D. Greenspan, of counsel), for *amici curiae* South Suburban Mayors and Managers Association *et al.*

JUSTICE McMORROW delivered the opinion of the court:

The "special duty" doctrine was first recognized by this court in *Huey v. Town of Cicero*, 41 Ill. 2d 361 (1968), as an exception to the common law "public duty" rule. The public duty rule is a long-standing precept which establishes that a governmental entity and its employees owe no duty of care to individual members of the general public to provide governmental services, such as police and fire protection. *Huey*, 41 Ill. 2d at 363. This rule of nonliability is grounded in the principle that the duty of the governmental entity to "preserve the well-being of the community is owed to the public at large rather than to specific members of the community." *Schaffrath v. Village of Buffalo Grove*, 160 Ill. App. 3d 999, 1003 (1987). The special duty doctrine arose as a judicially created exception to the nonliability principles of the public duty rule, and is applicable in certain limited instances where

a governmental entity has assumed a special relationship to an individual "so as to elevate that person's status to something more than just being a member of the public." *Schaffrath*, 160 Ill. App. 3d at 1003.

The principal issue in this appeal is whether the "special duty" doctrine violates the Illinois Constitution of 1970 when it is applied by the courts to override the immunities and defenses afforded to governmental entities by the Illinois General Assembly in the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 1994)). Defendants contend that when the special duty doctrine operates to nullify the immunities and defenses available under the Tort Immunity Act, two provisions of the Illinois Constitution of 1970 are violated: article XIII, section 4, which provides that the doctrine of sovereign immunity is abolished "[e]xcept as the General Assembly may provide by law" (Ill. Const. 1970, art. XIII, § 4); and the separation of powers clause under article II, section 1 (Ill. Const. 1970, art. II, § 1), which provides that no branch of government "shall exercise powers properly belonging to another." For the reasons which follow, we hold that the operation of the special duty doctrine to negate the immunities and defenses provided to governmental entities by the Illinois legislature pursuant to the provisions of the Tort Immunity Act violates both constitutional provisions.

## BACKGROUND

This appeal arises from a series of occurrences initiated on July 25, 1982, when Scott Zimmerman was arrested at 11:20 p.m. by Skokie police after he broke a glass mug as he was leaving Houlihan's Restaurant & Bar in the Old Orchard Shopping Center. At the outset, we note that for purposes of the narrow legal issue presented in this appeal, the parties do not dispute the underlying facts in this litigation. Therefore, we include only a general discussion of these background facts.

Upon Zimmerman's arrest, he was taken to the Skokie police station/jail, where he refused to be fingerprinted and became extremely upset. As a result of his refusal to cooperate with the fingerprinting procedure, the police placed Zimmerman alone in a cell in the men's cellblock at approximately 1 a.m. After he was placed in the cell, Zimmerman punched and kicked at the walls, screamed, and rattled his cell bars. At about the same time Zimmerman was placed into the cell, his family members arrived at the Skokie jail. Zimmerman's parents informed the officers that their son had been medically diagnosed as a claustrophobe, that he was under the care of a psychiatrist, and that he should be removed from the cell because he could not tolerate such confinement. At her request, Zimmerman's mother was allowed into the cellblock to calm Zimmerman. However, her efforts were unsuccessful, and she returned to the public area of the jail.

Although the statements made by Zimmerman's parents to the Skokie police concerning Zimmerman's claustrophobia were true, the police refused to believe these declarations and informed Zimmerman's family members that he would not be removed from the cell until he calmed down and could be fingerprinted. The relationship between Zimmerman's parents and the police thereafter became confrontational, and the family members were ordered to leave the police station. Zimmerman's family members complied after being assured by the officers that the officers would keep a watch over Zimmerman.

During that evening, Zimmerman was removed from his cell for a second attempt at fingerprinting, and, upon his removal, he calmed down. However, Zimmerman once again refused to comply with the fingerprinting procedure and was replaced in the cell, where his violent behavior resumed. Thereafter, one of the officers checked

on Zimmerman every 15 minutes and marked Zimmerman's physical condition as "okay" on the jail log. When an officer looked in on Zimmerman at approximately 2:45 a.m., Zimmerman was found lying in the cell with his hands around his neck, complaining that he could not breathe and gasping for air. At that time, Zimmerman was also screaming that he was going to kill himself because police had beaten him up for no reason. Fifteen minutes later, at approximately 3 a.m., when Zimmerman was again looked in on by an officer, Zimmerman was found hanging from the bars of his cell with his jeans around his neck, his body facing away from the bars and his legs looped through the bars.

Zimmerman was resuscitated at the Skokie jail by the officers, who administered CPR. Zimmerman was thereafter transported to a hospital where it was determined that blood loss to his brain as a result of the hanging caused him to suffer permanent brain damage that impaired his ability to work and care for himself. Medical workers also found that Zimmerman had a cut under his right eye, contusions and bruises on his chest and arms, and a deep gash on his shin, which resembled the shape of a shoe or boot tip.

Subsequently, Zimmerman was declared a disabled person by the probate court of Cook County and his father, Irving, was appointed his guardian. Irving (plaintiff) thereafter filed suit on behalf of his son to recover damages for personal injuries Zimmerman suffered during the period he was in the custody of the Skokie police. Plaintiff's cause of action, originally filed on February 23, 1983, named as defendants the Village of Skokie and the police officers involved in these incidents.

Plaintiff's case was dismissed with prejudice as a sanction by the trial court on March 27, 1986, after plaintiff failed to comply with trial court orders directing Zimmerman to appear for a deposition and requiring

plaintiff to respond to defendants' written discovery. Upon the trial court's denial of plaintiff's petition under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) to vacate its dismissal order, plaintiff appealed. The appellate court vacated the circuit court's denial of plaintiff's section 2—1401 petition and remanded the cause to the trial court for further proceedings. *Zimmerman v. Village of Skokie*, 174 Ill. App. 3d 1001 (1988). Defendants' petition for rehearing was denied by the appellate court, and this court denied defendants' petition for leave to appeal. *Zimmerman v. Village of Skokie*, 124 Ill. 2d 563 (1989).

Following remand to the trial court, plaintiff's case proceeded against defendants. On January 18, 1994, shortly before trial in this matter, the circuit court ruled on defendants' motion to strike and dismiss all counts of plaintiff's complaint. Defendants moved to dismiss plaintiff's claims on the pleadings on the basis that they were barred by various provisions of the Tort Immunity Act. Pursuant to section 4—105 of the Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 4—105) and section III(D) of the Municipal Jail and Lockup Standards as they read in 1982, the trial court granted defendants' motion only as to count V of the complaint, which asserted a cause of action in negligence. Section 4—105 of the Act read as follows:

"Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but a public employee, and the local public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know from his observation that the prisoner is in need of immediate medical care and fails to take reasonable action to summon medical care. Nothing in this Section

requires the periodic inspection of prisoners." Ill. Rev. Stat. 1983, ch. 85, par. 4—105.[1]

In count V, plaintiff alleged that defendants breached their duty to take reasonable action to summon medical care for Zimmerman. The trial judge determined that section 4—105 did not establish a cause of action in negligence when read in conjunction with section 2—202 of the Tort Immunity Act, which provides:

> "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton negligence." Ill. Rev. Stat. 1981, ch. 85, par. 2—202.

Although the allegations sounding in negligence in count V were dismissed, the trial judge commented that plaintiff could offer evidence that the defendants' alleged failure to provide medical care amounted to willful and wanton misconduct.

The trial judge denied the defendants' motion to strike and dismiss the remaining five counts of the complaint. Counts I and II asserted causes of action based upon alleged acts of willful and wanton misconduct, including defendants' placement of Zimmerman in a cell despite their awareness that he was claustrophobic and unstable.

Counts III and IV of plaintiff's complaint, according to the trial judge, were "virtual mirror images of Counts 1 and 2, but they sound in negligence." Although the trial court agreed with defendants' assertion that section

---

[1]Section 4—105 was substantively amended in 1986, and presently reads: "Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners." 745 ILCS 10/4—105 (West 1994).

2—202 of the Tort Immunity Act applied to these counts, he determined that at the pleading stage such a finding was not dispositive, because whether a police officer was engaged in the "execution and enforcement of any law" as contemplated under section 2—202 is a factual determination which could not be made at the pleading stage.

Defendants also unsuccessfully argued four other defenses under the Tort Immunity Act to counts III and IV. Defendants first asserted protections pursuant to section 4—102 of the Act, which provides:

> "[n]either a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service ***." Ill. Rev. Stat. 1981, ch. 85, par. 4—102.

The trial court determined that "[s]ection 4—102 is not applicable to this case because it is not intended to apply to a jail lockup situation such as this. That section applies to the general public's right to police protection."

Defendants next argued the defenses contained in section 4—103 of the Act, which provides:

> "Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel or facilities therein." Ill. Rev. Stat. 1981, ch. 85, par. 4—103.

The trial court held that this section would not bar plaintiff from proceeding on his claims in this case.

Lastly, in support of their motion, defendants asserted sections 6—105 and 6—106(a) of the Act (Ill. Rev. Stat. 1981, ch. 85, pars. 6—105, 6—106(a)). The trial judge determined these sections were inapplicable because they are limited to causes involving medical, hospital, and public health facilities, and were "not intended to apply to jail lockups."

Finally, the trial court denied defendants' motion to strike and dismiss count VI of plaintiff's complaint, which

alleged that despite the availability of any statutory immunities defendants could raise to plaintiff's negligence claims under the Tort Immunity Act, defendants may be found liable under a negligence theory pursuant to the special duty doctrine. The trial judge rejected defendants' contention that under the Illinois Constitution of 1970, the General Assembly was vested with the sole authority to define the principles governing sovereign immunity, and that the special duty doctrine, operating as an exception to the Tort Immunity Act, was therefore invalid. In its written ruling, the trial court determined that "the special duty exception still exists outside the Tort Immunity Act and that it does so without offending any provision of the Illinois Constitution."

The jury found in favor of the defendants and against plaintiff on all five counts. Subsequently, plaintiff filed a motion for a new trial, which was granted by the circuit court. Defendants, pursuant to Rule 306(a)(1) (166 Ill. 2d R. 306(a)(1)), then petitioned the appellate court for leave to appeal the trial court's order granting plaintiff a new trial. In their petition, defendants raised numerous issues contending that the trial court abused its discretion in setting aside the jury verdict for defendants and granting plaintiff a new trial on all issues.

Defendants thereafter filed a supplemental brief in the appellate court additionally challenging the trial court's pretrial ruling on their motion to strike and dismiss, focusing upon the trial court's allowance of plaintiff to proceed on his negligence claims under the special duty doctrine as an exception to governmental tort immunity. As they did before the trial judge, defendants argued in the appellate court that the Illinois Constitution of 1970 vested the General Assembly with the sole authority to determine governmental tort immunity and that the operation of the special duty doctrine to abrogate such immunities is contrary to the

grant of that power. In the alternative, defendants argued that the requirements of the special duty doctrine were not present in this case, and, therefore, plaintiff's negligence claims should have been barred by the Tort Immunity Act.

The appellate court entered a summary order affirming the trial court and remanding the cause for a new trial. No. 1—94—2448 (unpublished order under Supreme Court Rule 23). In its order, the appellate court not only articulated various grounds for its decision affirming the trial court's grant of a new trial, but also rejected the arguments proffered by the defendants in their supplemental brief that the operation of the special duty doctrine to negate governmental immunities provided under the Tort Immunity Act is unconstitutional. Thus, the appellate court concluded that plaintiff could properly proceed under the special duty doctrine, thereby allowing the jury to consider his negligence claims.

We granted the petition for leave to appeal from the appellate court's judgment filed by defendants Village of Skokie and certain defendant police officers (166 Ill. 2d R. 315(a)). We also allowed *amicus curiae* briefs to be filed by the City of Chicago, the Du Page Mayors and Managers Conference, the Illinois Association of School Boards, the Illinois Governmental Association of Pools, the Illinois Municipal League, the Illinois Park and Recreation Association, the Municipal Insurance Cooperative Agency and High-Level Excess Liability Pool, the Northwest Municipal Conference, the Southtowns Agency for Risk Management, and the South Suburban Mayors and Managers Association in support of those defendants.

In their appeal to this court, defendants state that they do "not challenge the appellate court order finding that it was not an abuse of discretion for the trial court to grant a new trial." Instead, defendants confine their

appeal to the narrow question of whether the operation of the special duty doctrine as an exception to statutory governmental tort immunity violates article XIII, section 4, and article II, section 1, of the Illinois Constitution. For the reasons that follow, we hold that operation of the special duty doctrine as an exception to immunities and defenses available to a governmental entity under the Tort Immunity Act is unconstitutional.

Our grant of defendants' petition also brings before us plaintiff's requests for cross-relief (155 Ill. 2d R. 318(a)), in which plaintiff seeks reversal of two rulings made by the trial court in connection with defendants' motion to strike and dismiss all counts of plaintiff's complaint: (1) the trial court's rejection of plaintiff's argument that the purchase of insurance by the Village of Skokie waived defendants' right to assert provisions of the Tort Immunity Act; and (2) the trial court's dismissal of count V of plaintiff's complaint on the basis that section 4—105 of the Tort Immunity Act (Ill. Rev. Stat. 1981, ch. 85, par. 4—105) as it read at the time of this incident did not establish a cause of action in negligence when construed in conjunction with section 2—202 of the Act. For the reasons that follow, we affirm the trial court's ruling that the purchase of insurance by the Village of Skokie did not waive defendants' right to assert the provisions of the Tort Immunity Act. Further, we vacate with instructions the trial court's dismissal of count V of the plaintiff's complaint.

## ANALYSIS

Defendants contend that when a governmental entity is immunized from liability under the Tort Immunity Act, courts may not invoke the special duty doctrine as an exception to that Act to permit the imposition of liability. Defendants argue that application of the special duty doctrine to contravene the immunities and defenses afforded to a governmental entity by the legislature

under the Tort Immunity Act is an impermissible infringement not only upon the Illinois General Assembly's constitutional responsibility to be the sole determinant of governmental immunities pursuant to article XIII, section 4, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, § 4), but also upon the separation of powers clause contained in article II, section 1 (Ill. Const. 1970, art. II, § 1).

Plaintiff argues that the viability of the special duty doctrine as an exception to the immunities and defenses granted in the Tort Immunity Act is well established, as its existence has been consistently recognized by Illinois courts in the decades following promulgation of the Tort Immunity Act and the subsequent ratification of the Illinois Constitution of 1970. Accordingly, plaintiff urges this court not to disturb this precedent. Plaintiff also argues that "[t]he legislature's decades long silence as dozens of cases recognized the continuing viability of the special duty doctrine is strong evidence that the legislature intended the doctrine to continue in existence."[2]

Recently, in *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335 (1998), this court determined that the special duty exception could not override immunities granted to governmental entities under the Tort Immunity Act. We note that *Harinek* was under advise-

---

[2]In his brief before this court, plaintiff also contended that defendants waived their argument concerning the constitutionality of the operation of the special duty doctrine because defendants failed to raise such argument at the earliest possible moment, which, according to plaintiff, was in plaintiff's 1987 appeal challenging the trial court's dismissal of this action with prejudice as a sanction. In their reply brief, defendants asserted that the constitutional issue was not ripe in 1987 because at that time, plaintiff's complaint contained counts based only upon allegations of willful and wanton misconduct. However, at oral argument before this court, counsel for plaintiff withdrew this specific contention, and we therefore do not consider it in this opinion.

ment at the same time as the case at bar. In that case we held that "the special duty doctrine may not operate to impose liability upon a public entity after a court has found that entity immune from liability under the Tort Immunity Act." *Harinek*, 181 Ill. 2d at 347. Where the special duty doctrine operates to negate immunities accorded to municipalities under the Tort Immunity Act, we held that both the provisions of the Illinois Constitution governing sovereign immunity (Ill. Const. 1970, art. XIII, § 4) and the separation of powers (Ill. Const. 1970, art. II, § 1) are violated. *Harinek*, 181 Ill. 2d at 347.

Under the common law doctrine of sovereign immunity, a governmental entity was afforded blanket immunity from all tort liability. "The original basis of the immunity rule has been called a 'survival of the medieval idea that the sovereign can do no wrong,' or that 'the King can do no wrong.' " *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11, 20 (1959); see also 2 M. Pollelle & B. Ottley, Illinois Tort Law, § 22.22 (2d ed. 1997). In recent years, however, sovereign immunity rules have been either modified or abolished at both the state and federal level. See 2 M. Pollelle & B. Ottley, Illinois Tort Law § 22.22 (2d ed. 1997).

The sovereign immunity of governmental entities in tort actions was abolished in Illinois by this court's 1959 decision in *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11, 20 (1959). In response to our *Molitor* decision, the Illinois General Assembly in 1965 enacted the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 1994)). Granting only immunities and defenses, the Act adopted the general principle from *Molitor* "that local governmental units are liable in tort but limited this with an extensive list of immunities based on specific government functions." *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 506 (1990). The immunities af-

forded to governmental entities under the Act work as an affirmative defense which, "if properly raised and proven by the public entity, bars a plaintiff's right to recovery." *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995). However, because the Tort Immunity Act is in derogation of the common law, it "must be strictly construed against the public entity involved." *Aikens v. Morris*, 145 Ill. 2d 273, 278 (1991).

Five years after the legislature passed the Tort Immunity Act, the Illinois Constitution of 1970 was ratified. Article XIII, section 4, of the Illinois Constitution provides: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." Ill. Const. 1970, art. XIII, § 4. This provision "embodies the presumptive rule from *Molitor* that units of local government are subject to tort liability," and provides that the General Assembly possessed the exclusive power to determine whether such a governmental unit is statutorily immune from liability. *Harinek*, 181 Ill. 2d at 344-45. Therefore, the tort liability of a governmental entity and its employees "is expressly controlled by constitutional provision and legislative prerogative as embodied in the Tort Immunity Act." *Burdinie*, 139 Ill. 2d at 507.

The special duty doctrine which is challenged by defendants in the instant cause originated as an exception to the common law public duty rule. The public duty rule establishes that "a municipality or its employees is not liable for failure to supply general police or fire protection." *Huey v. Town of Cicero*, 41 Ill. 2d 361, 363 (1968). The rationale behind the nonliability principle of the public duty rule is that a municipality's duty is to preserve the "well-being of the community" and that such a duty is "owed to the public at large rather than to specific members of the community." *Schaffrath v. Village of Buffalo Grove*, 160 Ill. App. 3d 999, 1003 (1987).

In *Huey*, this court determined that the public duty rule remained viable, even after the passage of the Tort Immunity Act, on the basis that the rule existed "[i]ndependent[ly] of statutory or common-law concepts of sovereign immunity." *Huey*, 41 Ill. 2d at 363.

The *Huey* decision was also the first occasion in which this court recognized the special duty doctrine as an exception to the public duty rule. There, this court explained that "[e]xceptions to the [public duty] rule have been found only in instances where the municipality was under a special duty to a particular individual, such as protecting a material witness from threatened injury by third parties." *Huey*, 41 Ill. 2d at 363. The special duty doctrine has therefore been applied in those narrow instances when the governmental entity assumed a special relationship to an individual "so as to elevate that person's status to something more than just being a member of the public." *Schaffrath*, 160 Ill. App. 3d at 1003. Thus, when the conduct of a municipal employee departed from the customary function of providing services to the general public, a departure from the public duty rule was likewise deemed warranted. *Burdinie*, 139 Ill. 2d at 508, 509.

This court's holding in *Huey* that the public duty rule exists "[i]ndependent[ly] of statutory *or* common-law concepts of sovereign immunity" (emphasis added) (*Huey*, 41 Ill. 2d at 363) establishes that neither this court's decision in *Molitor* abolishing sovereign immunity, the General Assembly's passage of the Tort Immunity Act, nor the ratification of the 1970 Illinois Constitution altered the common law public duty rule that a governmental entity generally owes no duty to provide an individual citizen with specific municipal services. This court has recently observed that "the existence of a duty and the existence of an immunity are separate issues." *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388

(1996); see also *Martin v. Lion Uniform Co.*, 180 Ill. App. 3d 955, 961 (1989) ("'The issue of a governmental entity's 'immunity and the issue of liability are two complete and distinct issues'"), quoting 57 Am. Jur. 2d *Municipal Tort Liability* § 54 (1971). The distinction between the concepts of duty and statutory immunities under the Tort Immunity Act after the ratification of the 1970 Illinois Constitution was discussed by the appellate court in *Martin*:

> "The judicial abrogation of sovereign immunity merely abrogated a defense to any preexisting duty. (*Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89.) *** Neither *Molitor*, nor any waiver of immunity creates new tort duties and liabilities. (See generally 57 Am. Jur. 2d *Municipal Tort Liability* § 72 (1971); see also *Trianon Park Condominium Association, Inc. v. City of Hialeah* (Fla. 1985), 468 So. 2d 912.) Under the inapplicable concept of sovereign immunity, despite any 'apparent duty,' the governmental entity is immune from tort liability. This does not occur from a denial of the tort's existence, but rather because the existing liability in tort is disallowed. In contrast, [under the rationale of the public duty rule] the tort liability or duty never existed. [Citations.]" *Martin*, 180 Ill. App. 3d at 961-62.

The distinction between an immunity and a duty is crucial, because only if a duty is found is the issue of whether an immunity or defense is available to the governmental entity considered: "[u]nlike immunity, which protects a municipality from liability for breach of an otherwise enforceable duty to the plaintiff, the public duty rule asks whether there was any enforceable duty to the plaintiff in the first place." 18 McQuillin on Municipal Corporations § 53.04.25, at 165 (3d rev. ed. 1993). Because the special duty doctrine is a judicially created exception to the public duty rule, the special duty doctrine cannot, and was not intended to, contravene the immunities provided to governmental entities under the Tort Immunity Act. Such operation constitutes a viola-

tion of the Illinois Constitution's provisions governing sovereign immunity (Ill. Const. 1970, art. XIII, § 4) as well as the separation of powers (Ill. Const. 1970, art. II, § 1).

Plaintiff argues we are prevented from holding that the special duty doctrine cannot constitutionally operate to override statutory immunities because such a ruling would violate the principle of *stare decisis*. According to plaintiff, a long line of previous decisions rendered by Illinois courts, subsequent to the passage of the Tort Immunity Act and the ratification of the Illinois Constitution of 1970, recognized the viability of the special duty doctrine. Plaintiff's argument, however, misses the mark. The doctrine of *stare decisis* "expresses the policy of the courts to stand by precedents and not to disturb settled points." *Neff v. George*, 364 Ill. 306, 308-09 (1936). *Stare decisis*, furthermore, has "more or less force, according to the nature of the question decided." *Neff*, 364 Ill. at 308. As such, plaintiff's citation to a list of decisions previously rendered by this court concerning the special duty doctrine is not persuasive on this point, as none of those rulings decided the narrow constitutional issue presented in the instant matter. Therefore, there is no "settled point" of law which is disturbed by our finding that the operation of the special duty doctrine in circumventing immunities provided under the Tort Immunity Act violates the Illinois Constitution.

Before our recent decision in *Harinek*, the interrelationship of the public duty rule, the special duty doctrine, the Tort Immunity Act, and the 1970 Illinois Constitution had never been squarely addressed by this court. As early as our 1990 decision in *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501 (1990), we commented upon the growing debate concerning the application of the special duty doctrine to contravene immunities provided under the Tort Immunity Act, recognizing that

"Illinois courts have discussed the special duty exception to the defenses and immunities provided under the Tort Immunity Act in cases decided both before and after the ratification of the present Illinois Constitution." *Burdinie*, 139 Ill. 2d at 510. This court, however, declined any further comment on this specific point. Thus, "the tasks of defining the special duty doctrine and the relationship between it and the Tort Immunity Act" were left to future cases. *Burdinie*, 139 Ill. 2d at 529 (Miller, J., specially concurring).

Three years after *Burdinie*, this court decided *Leone v. City of Chicago*, 156 Ill. 2d 33 (1993), where it was determined that the special duty doctrine was applicable to the plaintiff's cause of action under the facts and circumstances of that case. In the course of our discussion, we observed that the City had raised the argument, for the first time on appeal, that the "special duty exception to municipal immunity cannot be squared with the express terms of the *** Tort Immunity Act" and "because the special duty exception is a judicially created doctrine, it cannot override the Act without offending *** the *** Constitution." *Leone*, 156 Ill. 2d at 37-38. However, this court declined to reach the constitutional argument, holding that the issue was waived because it was not raised before the lower court: "[w]ithout intimating any view on the merits of this argument, we note simply that it is not properly before us." *Leone*, 156 Ill. 2d at 38.

Like the defendants in *Leone*, the defendants in *Calloway v. Kinkelaar*, 168 Ill. 2d 312 (1995), contended, for the first time on appeal, that the operation of the special duty doctrine as an exception to immunities granted under the Tort Immunity Act was an unconstitutional infringement on the power of the legislature to define the scope of governmental immunity. In arriving at the conclusion that the plaintiff's negligence counts were

barred because the plaintiff there never relied upon the special duty doctrine as a basis for recovery, this court declined to address the defendant's constitutional challenge, as it was "an issue *** unnecessary to our disposition of the instant case." *Calloway*, 168 Ill. 2d at 329. This court further observed that "as the constitutional argument was not raised in or decided by the circuit or appellate courts, we lack the benefit of a thoroughly researched and analyzed presentation of both sides of the issue." *Calloway*, 168 Ill. 2d at 329.

Therefore, prior to our recent decision in *Harinek*, the existence of the special duty doctrine had not been reconciled with the statutorily granted immunities under the Tort Immunity Act and the provisions of the 1970 Illinois Constitution. It is well settled that prior decisions in which no constitutional challenges were considered have no precedential value with respect to a subsequent constitutional challenge. *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 186 (1952). We conclude that because this court had not before addressed the constitutional conflict raised in the instant matter, there was no settled point of law on this precise constitutional issue, and therefore the doctrine of *stare decisis* is inapposite.

In a related argument, plaintiff urges this court to refrain from finding the operation of the special duty doctrine unconstitutional on the grounds that the Illinois General Assembly's failure to amend the Tort Immunity Act in light of court decisions which recognized the special duty doctrine as an exception to the immunities granted in the Tort Immunity Act establishes and confirms that the legislature intended the doctrine to operate in the manner pursued by the courts. Plaintiff asserts that the previous court decisions should be deemed controlling unless and until the General Assembly provides otherwise.

We disagree. It is a fundamental principle that

"[w]here the legislature chooses not to amend a statute after a judicial construction, it will be presumed that it has acquiesced in the court's statement of the legislative intent." *Miller v. Lockett*, 98 Ill. 2d 478, 483 (1983). However, the fact remains that this court has never ruled that operation of the special duty doctrine to negate the immunities provided to governmental entities pursuant to the Tort Immunity Act comported with the Illinois Constitution. As such, there has been no "judicial construction" concerning the validity of the operation of the special duty doctrine in which the legislature could acquiesce.

Summarizing, we hold that the imposition of the special duty exception to override the legislatively created governmental immunities in the Tort Immunity Act violates the sovereign immunity provisions of the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, § 4) and also violates the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, § 1).

We now turn to the arguments raised by plaintiff in his cross-appeal pursuant to Rule 318(a) (155 Ill. 2d R. 318(a)) concerning two rulings made by the trial judge in connection with defendants' motion to strike and dismiss all counts of plaintiff's complaint. As an initial matter, plaintiff renews the argument made before the trial court that defendants have waived the protections of the Tort Immunity Act by purchasing policies of insurance. Based upon this contention, plaintiff urges that defendants cannot validly raise any immunities or defenses available under the Act, an issue which is of importance in light of the appellate court's remand of this cause to the circuit court for a new trial.

Specifically, plaintiff asserts that under the terms of the Tort Immunity Act, as it existed at the time of this incident in 1982, a municipality waived the immunities and defenses provided by the Act if it purchased liability

insurance. At the time of this incident, section 9—103(a) of the Act provided:

> "A local public entity may protect itself against any liability which may be imposed on it *** by means including, but not limited to, insurance, self-insurance, the purchase of claims services, or participation in a reciprocal insurer ***. Insurance shall be carried with a company authorized by the Department of Insurance to write such insurance coverage in Illinois." Ill. Rev. Stat. 1983, ch. 85, par. 9—103(a).

Furthermore, section 9—103(c) of the Act read as follows:

> "Every policy for insurance coverage issued to a local public entity shall provide or be endorsed to provide that the company issuing such policy waives any right to refuse payment or to deny liability thereto within the limits of said policy by reason of the non-liability of the insured public entity for the wrongful or negligent acts of itself or its employees and its immunity from suit by reason of the defenses and immunities provided in this Act." Ill. Rev. Stat. 1983, ch. 85, par. 9—103(c).

In 1986, section 9—103 of the Act was amended by the Illinois General Assembly, eliminating the waiver provision.[3] For purposes of the instant matter, we are concerned only with the pre-1986 amendment version of this statute.

At the time of this incident, the Village of Skokie was self-insured up to $250,000, and had purchased two insurance policies: a $1 million liability policy and an excess liability policy in the additional amount of $10 million.

---

[3]Section 9—103(c) now provides in pertinent part: "Any insurance company that provides insurance coverage to a local public entity shall utilize any immunities or may assert any defenses to which the insured local public entity or its employees are entitled ***." 745 ILCS 10/9—103(c) (West 1994). Thus, for claims arising after the effective date of the 1986 amendment, a governmental entity may assert any of the immunities or defenses set forth in the Act, without regard to whether insurance has been purchased by that entity.

In rejecting plaintiff's argument that by purchasing insurance Skokie waived the protections of the Tort Immunity Act, the trial court observed that Skokie had a self-insured retention and that the two insurers from whom Skokie acquired the insurance were "bankrupt and defunct." The trial court held that under such circumstances, "[p]ublic money is implicated, and the defendant police officers face personal responsibility. Finding a waiver under these circumstances would not be consistent with the intent and purpose of the Act."

Plaintiff argues that Skokie's election to procure insurance works as a complete and irrevocable waiver of its right to invoke immunities and defenses pursuant to the Tort Immunity Act, that Skokie's self-insured retention is irrelevant, and that the trial court erred in concluding that a completed waiver may be undone based upon a subsequent fortuitous circumstance such as the liquidation of Skokie's insurers.

As this court observed in *Antiporek v. Village of Hillside*, 114 Ill. 2d 246 (1986), it was well established under the pre-1986 amendment version of section 9—103(c) that the Act's immunities are "effectively waived where the public entity is protected by a policy of insurance, issued by an insurance 'company,' covering an alleged liability." *Antiporek*, 114 Ill. 2d at 247. This court focused upon the distinction made in section 9—103(a) between "insurance" and "self-insurance," and determined that a waiver of governmental tort immunities under circumstances where a conventional insurance company would pay judgments from nonpublic funds is consistent with the policies underlying the Act, to the extent that tort immunity is "intended to protect governmental funds, assuring that they will be directed and used for governmental purposes." *Antiporek*, 114 Ill. 2d at 250. Thus, under the statutory provision as it previously read, if a municipality decides to protect individu-

als against negligent conduct by acquiring commercial insurance, "the immunity is waived since government funds are no longer in jeopardy and immunity would inure to the benefit of private investors who have assumed the risk of insurers." *Antiporek*, 114 Ill. 2d at 250.

However, in situations where a judgment, or portion thereof, would be paid from public funds, Illinois courts have held in construing the pre-1986 amendment version of the statute that the immunities of the Act are not waived to the extent of the exposure of the government funds. For example, in *Beckus v. Chicago Board of Education*, 78 Ill. App. 3d 558 (1979), where the plaintiff sought damages within the level of defendant's self-insured retention, the court held that "[b]ecause of the absence of any insurance coverage for plaintiff's injury, there was no waiver of the Tort Immunity Act. The purpose of section 9—103[c] of the Act is to require that when a local public entity is immune from suit, its insurance carrier cannot avoid liability by invoking the entity's immunity." *Beckus*, 78 Ill. App. 3d at 561.

In *Mastandrea v. Chicago Park District*, 259 Ill. App. 3d 897 (1994), the court found "no meaningful distinction" in applying similar reasoning where the plaintiff sought damages in an amount over, rather than under, the self-insured retention. *Mastandrea*, 259 Ill. App. 3d at 901. The court observed that under either situation, "[t]he intent of the Tort Immunity Act is to protect public funds, and we must carry out that intent regardless of whether a plaintiff seeks damages in an amount below or above the municipality's self-insured retention." *Mastandrea*, 259 Ill. App. 3d at 901. Thus, the court determined that because the defendant had no insurance coverage for a portion of the judgment, that amount would necessarily be paid from public funds, and, consequently, "the Tort Immunity Act should have been applied to the extent of the [uninsured amount]." *Mastandrea*, 259 Ill. App. 3d at 901.

In the instant matter, the Village of Skokie bears the primary responsibility for satisfying a damages judgment under its self-insured retention, a fact compounded by the insolvency of its excess insurance carriers. The well-established policy of the Tort Immunity Act to protect such public funds defeats plaintiff's contention that Skokie's previous procurement of insurance operated as a waiver of the immunities and defenses available under the Act. As this court has observed in *Antiporek*, "when a municipality self-insures, it bears all risks itself, and settlements or awards are paid directly from government coffers." *Antiporek*, 114 Ill. 2d at 250. Where a municipality bears such risks, this court concluded that the pre-1986 amendment version of section 9—103(c) "does not come into play in such circumstance because there is no concern that private investors, paid to assume certain risks, will attempt to assert immunities and shirk responsibilities they have assumed." *Antiporek*, 114 Ill. 2d at 250. Thus, the trial court in the case at bar did not err in holding that the defendants may assert all defenses and immunities appropriately available to them under the Tort Immunity Act to the extent that public money is implicated.

Finally, in connection with the remand of this cause to the circuit court for a new trial, plaintiff asserts that the trial court erred in dismissing count V of his complaint on the basis that section 4—105 of the Tort Immunity Act, as it read at the time of this incident, did not provide a cause of action in negligence. Section 4—105 provided:

"Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but a public employee, and the local public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know from his observation that the prisoner is in need

of immediate medical care and fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners." Ill. Rev. Stat. 1981, ch. 85, par. 4—105.[4]

Plaintiff contends that the legislature's use of the phrase "knows or has reason to know" in section 4—105 as it existed in 1982 is an indication that a negligence standard was intended by the General Assembly, and that a subsequent amendment to this section in 1986 deleting the "knows or has reason to know" language and replacing it with a willful and wanton standard supports this contention.

The trial court judge ruled that section 4—105, as it read at the time of this incident, did not establish a cause of action in negligence. In arriving at this holding, the trial court judge read section 4—105 within the context of the entire statutory scheme and purpose of the Tort Immunity Act, and in his written ruling held that section "4—105 was intended to establish complete immunity for the public entity or employee who fails to furnish or obtain medical care for a prisoner in custody, but then carves out an exception to that immunity for instances where the jailer knows or has reason to know from his observation that the prisoner is in need of immediate medical care and fails to take reasonable action to sum-

---

[4]The phrase "knows or has reason to know" was eliminated from section 4—105 in 1986, replaced by the phrase "through willful and wanton conduct." Pub. Act 84—1431, eff. November 25, 1986. Section 4—105 presently reads: "Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners." 745 ILCS 10/4—105 (West 1994).

mon that care. To survive, the exception must be read with section 2—202. That is, the jailer's conduct must be willful and wanton for the exception to apply. Otherwise, the exception would swallow the rule and serve no purpose." The trial judge's ruling, however, makes no findings that the conduct of defendants fell within the provisions of section 2—202.

Legislative intent is determined primarily from the language employed in the Act, and this court has recently reiterated in *Barnett v. Zion Park District* that the Tort Immunity Act must be evaluated as a whole, with each provision of the Act construed in relation to every other section. *Barnett*, 171 Ill. 2d at 389. The *Barnett* court stated: "We must not depart from the plain language of the Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent." *Barnett*, 171 Ill. 2d at 389. Under the plain language of section 4—105 as it read at the time of this incident, the "knows or has reason to know" phrase employed by the legislature in this section indicates that the General Assembly intended a negligence standard to govern the narrow exception to nonliability. This conclusion is buttressed by the fact that the General Assembly subsequently amended section 4—105 in 1986 to remove the "knows or has reason to know" phrase and replaced it with a willful and wanton misconduct standard. See *City of East Peoria v. Group Five Development Co.*, 87 Ill. 2d 42, 46 (1981) ("In ascertaining legislative intent, courts may consider subsequent amendments to a statute").

However, this is not the end of the inquiry. Because the provisions of the Tort Immunity Act are to be construed in relation to every other section, it follows that under the preamended version of section 4—105, the exception to nonliability contained in that section is governed by a negligence standard unless the case falls

within the parameters of section 2—202, which provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." Ill. Rev. Stat. 1981, ch. 85, par. 2—202. This court has determined that "section 2—202 immunity is a limited immunity, which dimensions are narrower than the scope of a police officer's employment or his performance of official functions and duties." *Aikens v. Morris,* 145 Ill. 2d 273, 281 (1991). We further observed in *Barnett* that "[s]ection 2—202 is not a general exception to all of the other immunities established by the Tort Immunity Act. That section expressly immunizes a public employee from liability only for the employee's negligent 'act or omission in the execution or enforcement of any law.' [Citation.] Based on this plain language, this section does not grant immunity for every act or omission of public employees while on duty. [Citation.] Rather, section 2—202 provides immunity only where the public employee is negligent while *actually* engaged in the execution or enforcement of a law." (Emphasis in original.) *Barnett,* 171 Ill. 2d at 390-91.

Thus, the plain language of the preamended version of section 4—105 indicates that a negligence standard would apply to the nonliability exception contained in that section, unless a factual determination is made that the defendants' conduct fell within the parameters of the provisions of section 2—202 of the Act, thereby raising the standard to that of willful and wanton misconduct. We therefore vacate the trial court's dismissal of count V of plaintiff's complaint, and upon remand of this cause to the trial court, instruct the trial court to further consider this issue consistent with this opinion.

For the foregoing reasons, we reverse the judgment of the appellate court and the circuit court on the issue of whether the operation of the special duty doctrine in

overriding immunities provided to governmental entities by the Illinois General Assembly is unconstitutional. In connection with the pretrial rulings challenged by plaintiff, we affirm the trial court's ruling that in the facts of this case, the purchase of insurance by the Village of Skokie did not waive defendants' ability to invoke the immunities and defenses available under the Tort Immunity Act. Further, we vacate the trial court's dismissal of count V of plaintiff's complaint and remand that issue to the trial court for further proceedings consistent with this opinion.

> *Appellate court judgment reversed in part;*
> *circuit court judgment affirmed in part,*
> *reversed in part, and vacated in part;*
> *cause remanded.*

JUSTICE HARRISON, dissenting:

In *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 346-47 (1998), this court declared the special duty exception to sovereign immunity unconstitutional. All previous decisions by our court and the appellate court recognizing the validity of the special duty doctrine were expressly overruled. That being so, I fail to see what legitimate jurisprudential function is served by the majority's protracted discussion of the doctrine here. Perhaps my colleagues simply feel the need to reassure the bar that they have not changed their minds again.

The length of the majority's latest special duty discussion has not enhanced its persuasiveness. I wrote in *Harinek* that it was wrong for us to abruptly depart from decades of precedent recognizing the special duty doctrine (*Harinek*, 181 Ill. 2d at 358 (Harrison, J., dissenting)), and I continue to adhere to that view. Once the question was decided in *Harinek*, however, it became binding precedent which I feel obliged to follow.

My reason for dissenting is wholly unrelated to the

constitutionality of the special duty doctrine. I dissent today because the majority has misunderstood some basic principles of appellate review and has misconstrued certain provisions of the Tort Immunity Act.

In disposing of this case, the majority purports to overrule or affirm various holdings made by the circuit and appellate courts in support of the judgments those courts entered. What the majority overlooks is that our job is not to review holdings. We review judgments. It is the propriety of judgments themselves and not what else that may have been said by the lower courts that is before us on appeal. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983). Our function as a reviewing court is simply to determine whether the lower courts reached the correct result. The reasons given by a lower court for its decision or the findings on which a decision is based are not material if the judgment is correct. See *Board of Managers of Dominion Plaza One Condominium Ass'n No. 1-A v. Chase Manhattan Bank, N.A.*, 116 Ill. App. 3d 690, 694 (1983). A judgment may be sustained upon any ground warranted by the record. *Bell v. Louisville & Nashville R.R. Co.*, 106 Ill. 2d 135, 148 (1985).

The present case is before us on appeal from a judgment of the appellate court affirming, on interlocutory appeal under Rule 306(a)(1) (166 Ill. 2d R. 306(a)(1)), an order of the circuit court granting plaintiff a new trial. The circuit court ordered a new trial based on various trial errors which had nothing to do with the viability of the special duty doctrine. The errors pertained to such matters as the admission of evidence, jury selection, and improper arguments by defense counsel.

In their interlocutory appeal, defendants claimed that the trial court abused its discretion in setting aside the jury's verdict and allowing plaintiff to try his case again. The appellate court rejected this claim, noting, among

other things, that defendants had failed to provide it with an adequate record. The record remains devoid of materials necessary to review the circuit court's order granting a new trial, and defendants expressly conceded in their petition for leave to appeal that the appellate court was correct in affirming the circuit court's decision to order a new trial. Under these circumstances, defendants' leave to appeal should never have been allowed, and their appeal should be summarily dismissed pursuant to Rule 302(c) (134 Ill. 2d R. 302(c)).

Even if I agreed that we should address the case on the merits, I still could not concur in the majority's opinion. Because this appeal challenges the propriety of the new trial order and because defendants now agree that the new trial order was proper, the only appropriate disposition at this point is to affirm the appellate court's judgment and remand to the circuit court for a new trial.

Although I would affirm outright, I agree with the majority that the statutory immunity questions should be addressed. As a general rule I am reluctant to address issues that are not essential to resolution of the specific issue at hand, and I do not think that the appellate court should have addressed the special duty question given the posture of the case. The fact is, however, that the appellate court did pass on the question, and it did so in a way that is contrary to our recent decision in *Harinek*. If we do not step in to clarify the law now, it may only engender confusion later. In the interest of conserving judicial resources and insuring a consistent body of precedent, some discussion on our part is therefore appropriate. Unlike the majority, however, I would not alter the lower courts' judgments. I would simply affirm for different reasons.

Prior to *Harinek*, our court conceptualized the special duty doctrine as an exception to both the common law public duty rule and the statutory immunities set forth

in the Tort Immunity Act. *Doe v. Calumet City*, 161 Ill. 2d 374, 385-86 (1994). As an exception to immunities created by statute, the doctrine did not come into play unless the defendants were otherwise immunized from liability for negligence by a provision of the Tort Immunity Act. In the case before us today, there is no basis for holding that the Tort Immunity Act shields defendants from liability on plaintiff's negligence claims.

Municipalities and their employees who seek to invoke sovereign immunity under the Tort Immunity Act must show that a particular provision of the Act shields them from liability in tort. The immunities set forth in the Act are in the nature of an affirmative defense which the public entity must plead and prove. See *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995). There is no presumption in favor of statutory immunity. To the contrary, because the Tort Immunity Act is in derogation of the common law, the court has held that it must be strictly construed against the local public entity or public employee. *Aikens v. Morris*, 145 Ill. 2d 273, 278 (1991).

As the majority opinion indicates, defendants initially invoked a variety of provisions under the Tort Immunity Act as a defense to plaintiff's negligence claims. By the time they reached the appellate court, defendants argued only that plaintiff's negligence claims should be barred by sections 4—103, 6—105 and 6—106(a) of the Act (Ill. Rev. Stat. 1981, ch. 85, pars. 4—103, 6—105, 6—106(a)). In their petition for leave to appeal, which they elected to have stand as their brief (166 Ill. 2d R. 315(g)), defendants winnowed their list of possible statutory immunities even further. They now rely exclusively on section 2—202, which relieves public employees from liability for acts or omissions ''in the execution or enforcement of any law'' unless such acts or omissions are willful and wanton. Ill. Rev. Stat. 1981, ch. 85, par. 2—202.

Under the plain language of the statute, section 2—202 does not grant immunity for every act or omission of public employees while on duty. Rather, it provides immunity only where the public employee is negligent while actually engaged in the execution or enforcement of a law. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 391 (1996). As in *Barnett*, it does not appear that the offending municipal employees in this case were "executing or enforcing a law" in any sense. Defendants tell us that they will argue on remand that they were, in fact, engaged in the execution and enforcement of a law when they abandoned Scott Zimmerman to hang himself in his cell, but this case dates back 15 years now. If defendants could make such an argument legitimately, they surely would have done so already. Accordingly, I would hold, as we did in *Barnett*, that section 2—202 does not apply to this case.

Governmental units are liable in tort on the same basis as private tortfeasors unless a tort immunity statute imposes conditions upon that liability. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 192 (1997). Because section 2—202 is inapplicable and because defendants no longer claim the protection of any other provision of the Tort Immunity Act, the viability of plaintiff's negligence claims does not depend on the special duty exception. On remand, plaintiff may proceed against defendants as he would against private individuals.

In addition to any common law negligence claims he might assert, plaintiff may also proceed against defendants based on section 4—105 of the Tort Immunity Act. That statute expressly provides that

> "a public employee, and the local public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know from his observation that the prisoner is in need of immediate medical care and fails to take reasonable action to summon medical care." Ill. Rev. Stat. 1981, ch. 85, par. 4—105.

This statute is broad enough to embrace all of plaintiff's negligence claims, and plaintiff has so argued. Contrary to the position taken by the majority, the applicability of section 4—105 is not limited to plaintiff's claims under count V of his third amended complaint.

The majority makes one final error. In discussing section 4—105, my colleagues assert that even if a defendant's conduct fell within the terms of the statute, that defendant still could not be held liable for negligence if the defendant's conduct involved an "act or omission in the execution or enforcement of any law" within the meaning of section 2—202. In such a case, the majority claims, the defendant could only be held liable if his conduct rose to the level of willful and wanton misconduct.

Because defendants' conduct here does not fall within the terms of section 2—202, there is no need to discuss the relationship between that statute and section 4—105. Even if section 2—202 were relevant, however, the majority's analysis would be incorrect for two reasons.

First, it is axiomatic that specific statutory provisions generally control over general provisions on the same subject. *McDunn v. Williams*, 156 Ill. 2d 288, 309 (1993). Section 2—202 deals generically with acts or omissions in the execution or enforcement of the law. Section 4—105, by contrast, is addressed to the specific circumstances at issue here, namely, the failure of defendants to summon medical care for Zimmerman, a prisoner in their custody, when they knew he needed it. Because the statute is more specific, it is controlling and allows recovery for ordinary negligence.

Second, the practical effect of the majority's approach is to engraft a willful and wanton standard onto the version of section 4—105 governing this case. Where the legislature intends municipal liability to be governed by a willful and wanton standard, it has said so explicitly.

See, *e.g.*, Ill. Rev. Stat. 1981, ch. 85, par. 3—106. In the case of section 4—105, what the legislature said explicitly is that liability may be premised on ordinary negligence. If that were not the legislature's intent and the majority's construction were correct, there would have been no need for the legislature's subsequent amendment to the statute to expressly include a willful and wanton standard. See 745 ILCS 10/4—105 (West 1996).

In sum, I agree with the result reached by the appellate court, but for different reasons. The appellate court was correct in affirming the circuit court's judgment granting plaintiff a new trial, and plaintiff should be permitted to pursue his negligence claims on remand regardless of the viability of the special duty exception. I therefore dissent.

JUSTICE NICKELS, also dissenting:

I dissent in two respects. First, I disagree with the majority's discussion of the special duty doctrine. Second, I disagree with the majority's application of sections 2—202 and 4—105 of the Tort Immunity Act. Accordingly, I write separately.

The majority, relying on *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335 (1998), abolishes the special duty doctrine. This doctrine has been applied in numerous cases over the past 30 years. See *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 339 n.1 (1995) (Freeman, J., specially concurring) (collecting cases). Whatever the genesis of the special duty doctrine, it has become an ingrained part of our case law. The appellate court correctly recognized the viability of the special duty doctrine based on past decisions of this court.

As recently stated by this court, the legislature is the appropriate body to alter this existing law, if it so desires. See *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 520 (1990). The legislature, however, has failed to act in the decades that the special duty doctrine has been

applied. For these reasons, and for reasons more fully set forth in my special concurrence in *Harinek*, I believe that the special duty doctrine should not be abolished. See *Harinek*, 181 Ill. 2d at 350-53 (Nickels, J., specially concurring). Accordingly, I believe this court should reconsider the reasoning of *Harinek*.

The majority also remands this cause to the circuit court for a factual determination as to whether section 2—202 of the Tort Immunity Act applies. Under section 2—202, "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton negligence." Ill. Rev. Stat. 1981, ch. 85, par. 2—202. The majority recognizes that section 2—202 does not embrace all activities that a public employee might perform in the course of his employment. See 183 Ill. 2d at 57, quoting *Aikens v. Morris*, 145 Ill. 2d 273, 281 (1991); see also *Arnolt v. City of Highland Park*, 52 Ill. 2d 27, 33 (1972). Section 2—202 requires something more. It requires that a public employee actually be executing or enforcing a law. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 390-91 (1996). Section 2—202 simply does not apply because the allegations do not involve the actual execution or enforcement of a law.

In contrast, section 4—105 specifically addresses the failure of public officials to take reasonable action to summon medical care where they are aware that a prisoner needs immediate medical care. Ill. Rev. Stat. 1981, ch. 85, par. 4—105. This statute clearly establishes a negligence standard of care. It is a more specific provision than section 2—202 and encompasses the allegations raised in the complaint. A factual determination is therefore unnecessary. To this extent, I agree with Justice Harrison in his dissent in this case.

Accordingly, I would allow plaintiff to pursue his negligence claims on remand. I would allow plaintiff to

proceed under both the special duty doctrine and section 4—105.