NOTICE

Decision filed 10/06/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0501

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| JENNIFER KEENER, Individually and as Administrator of the Estate of Chelsea Keener, Deceased, | ) Appeal from the<br>) Circuit Court of<br>) Williamson County. |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 04-L-146 |
| | ) |
| THE CITY OF HERRIN, | ) Honorable |
| | ) Ronald R. Eckiss, |
| Defendant-Appellee. | ) Judge, presiding. |

_____

PRESIDING JUSTICE STEWART delivered the opinion of the court:

The plaintiff, Jennifer Keener (Jennifer), appeals from an order of the circuit court of Williamson County granting a motion to dismiss her amended complaint in favor of the defendant, the City of Herrin (Herrin). We reverse in part and remand.

BACKGROUND

Jennifer is the natural mother of Chelsea Keener (Chelsea). A vehicle struck and killed Chelsea during the early morning hours of August 9, 2003, as she walked along a public street in Herrin, Illinois. On July 30, 2004, Jennifer filed a complaint against Herrin, and in her complaint, she alleged that Herrin was responsible for Chelsea's death under theories of negligence and wilful and wanton conduct. Jennifer brought the complaint individually and as the administrator of Chelsea's estate.

Jennifer alleged in her complaint that in the evening of August 8, 2003, and into the early morning hours of August 9, 2003, Chelsea, who was 18 years old, consumed alcoholic beverages to the point of intoxication. At approximately 3:30 a.m., officers for the Herrin

1

police department took Chelsea into custody and charged her with the offense of underage consumption of alcohol. Jennifer alleged that when Herrin police officers took Chelsea into custody, Chelsea was incoherent and legally intoxicated with a blood-alcohol level of 0.18. The Herrin police department was notified that an adult would come to the police station to pick up Chelsea. However, at approximately 4:40 a.m., the Herrin police department allowed Chelsea to leave the police station unattended, without any assistance, and while she was still intoxicated. At approximately 5 a.m., a vehicle struck and killed Chelsea as she walked on a street in Herrin.

Jennifer alleges that Herrin was guilty of negligent and wilful and wanton conduct by allowing Chelsea to leave the custody of the police department unattended and unsupervised while in an intoxicated state, failing to maintain Chelsea in custody until an adult could pick her up, and failing to follow its own policies and procedures for handling the arrest and release of an intoxicated minor. Herrin's motion to dismiss Jennifer's complaint was granted, and on January 18, 2005, Jennifer filed an amended complaint which added an additional count that alleged Herrin owed a special duty to Chelsea.

On June 30, 2005, Herrin filed a motion to dismiss the amended complaint. Attached to the motion was an affidavit of Quinn Laird, the Herrin police officer who had arrested Chelsea. On August 8, 2005, the parties, through their attorneys, appeared in court for a case management conference. Although no record was made of the case management conference, the parties do not dispute that the court agreed to take Herrin's motion to dismiss under advisement to allow Jennifer's attorney to obtain the discovery deposition of the arresting officer and file a response to the motion. Nevertheless, the circuit court made the following docket entry:

"Attys. present for C.M.C. Rule on motion to dismiss on Sept. 9, 2005. Plaintiff will stand on pleadings."

On September 13, 2005, the circuit court dismissed Jennifer's amended complaint with the following docket entry:

> "Pending is defendant's motion to dismiss. The motion is granted and this case is dismissed. Plaintiff has elected to stand on these pleadings so no amendment of the complaint is needed. This cause is dismissed and there is no reason to delay any appeal herein. Clerk to close file. Judicial secretary to send a copy of record sheet to all attorneys."

Unfortunately, no judicial secretary and no one from the clerk's office sent a copy of the record sheet to the attorneys or otherwise notified the attorneys that the amended complaint had been dismissed, and neither party knew of the entry of the dismissal order.

Being unaware of the dismissal order, the parties conducted the discovery deposition of Officer Laird on March 13, 2006. On April 17, 2006, Jennifer filed her response to Herrin's motion to dismiss, which included references to Laird's testimony from his deposition. On April 20, 2006, Herrin's attorney sent a letter to the circuit judge assigned to the case, requesting that the court conduct a hearing to address the issues that the parties believed were still pending in the motion to dismiss and in Jennifer's response to the motion. In the letter, Herrin's attorney asserted that the court had heard argument and granted Jennifer's attorney "leave to file a response to the Motion to Dismiss Amended Complaint before [the court] ruled on our Motion to Dismiss." Herrin's attorney further asserted, "It is my recollection you took the matter under advisement." Upon receipt of this letter, the court set the case for a status hearing.

On August 7, 2006, the parties appeared in court for a status hearing, and both attorneys learned for the first time that the amended complaint had been dismissed with prejudice on September 13, 2005. The circuit court acknowledged that the docket entry had not been mailed to the attorneys of record. The circuit court made the following docket

3

entry at the conclusion of the August 7, 2006, status hearing:

> "Attys appear. Motion to dismiss is reconsidered upon written motion to be submitted. Review on Aug. 25, 2006."

On August 17, 2006, Jennifer filed a "Motion to Reconsider." The motion was filed pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)). In her motion, Jennifer requested that the court reconsider its prior ruling on the motion to dismiss in light of the additional facts revealed in the discovery deposition of Officer Quinn Laird[1] and grant appropriate relief pursuant to section 2-1401. Jennifer further alleged that she had exercised due diligence in obtaining the deposition in that both parties, unaware of the dismissal, had continued to litigate this case. She also alleged due diligence in filing her section 2-1401 motion once she learned of the dismissal.

On August 25, 2006, the circuit court made the following docket entry:

> "The motion to reconsider is reviewed. The motion is granted. This court reconsiders its previous ruling on Sept. 13, 2005. After further considering the motion to dismiss[,] same is granted again. This case is dismissed again. Judicial secretary to send copy of record sheet to all attorneys of record."

Jennifer filed a notice of appeal from the circuit court's August 25, 2006, order. In her notice of appeal, Jennifer specifically provided as follows: "The only portion of this Order being appealed by the Plaintiff-Appellant is that portion granting the Defendant's Motion to Dismiss Amended Complaint." Herrin has filed no appeal or cross-appeal from the circuit court's order granting Jennifer's section 2-1401 motion for relief from the final

_____

[1]Although Jennifer alleged that a transcript of the deposition had been submitted to the court with her response to the motion to dismiss, the deposition is not included in the record on appeal.

4

order entered on September 13, 2005.

## ANALYSIS

The first issue we must address is the jurisdiction of this court to consider the merits of Jennifer's appeal. Although the parties did not initially raise the issue of jurisdiction, we entered a show-cause order, *sua sponte*, requiring Jennifer to show cause why her appeal should not be dismissed for a lack of jurisdiction. We then decided to take the issue of jurisdiction with the case and directed the parties to brief the issue. We now find that we have jurisdiction over Jennifer's appeal from the August 25, 2006, order of the circuit court dismissing her amended complaint.

Supreme Court Rule 303 (210 Ill. 2d R. 303) establishes the requirements for appellate court jurisdiction. Rule 303(a)(1) provides, in pertinent part, as follows:

"[T]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from[] or, if a timely posttrial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending postjudgment motion ***." 210 Ill. 2d R. 303(a)(1).

In situations where a party fails to file a timely notice of appeal under Rule 303(a)(1), the party may seek an extension of time to file a notice of appeal under Rule 303(d) (210 Ill. 2d 303(d)). Rule 303(d) provides, in pertinent part, as follows:

"On motion supported by a showing of reasonable excuse for failure to file a notice of appeal on time *** filed in the reviewing court within 30 days after expiration of the time for filing a notice of appeal, the reviewing court may grant leave to appeal ***." 210 Ill. 2d R. 303(d).

Litigants must strictly comply with these jurisdictional rules governing appeals, and neither a circuit court nor an appellate court has the authority to excuse compliance with the

5

filing requirements of the rules. *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 632 N.E.2d 1010 (1994); *Clark v. Han*, 272 Ill. App. 3d 981, 651 N.E.2d 549 (1995). The timely filing of a notice of appeal is mandatory and jurisdictional. *Clark*, 272 Ill. App. 3d at 984, 651 N.E.2d at 551. Supreme Court Rule 303(a) requires that a notice of appeal be filed within 30 days from the entry of a final judgment. 210 Ill. 2d R. 303(a). The effective date of the judgment determines when the time for filing a notice of an appeal under Rule 303(a) begins to run. *Granite City Lodge No. 272, Loyal Order of the Moose v. City of Granite City*, 141 Ill. 2d 122, 565 N.E.2d 929 (1990) (*Granite City Lodge*). The effective date of a final judgment is when the court's action is publicly expressed, in words, and at the situs of the proceeding. *Granite City Lodge*, 141 Ill. 2d at 123, 565 N.E.2d at 929. "A judgment 'becomes public at the situs of the proceeding when it is filed with the clerk of the court.' " *Granite City Lodge*, 141 Ill. 2d at 126, 565 N.E.2d at 931 (quoting *People ex rel. Schwartz v. Fagerholm*, 17 Ill. 2d 131, 137, 161 N.E.2d 20, 24 (1959)).

In the present case, the circuit court, by a docket entry, entered a final order dismissing the amended complaint on September 13, 2005. The docket entry also directed the circuit court's judicial secretary to send a copy of the docket entry to all the attorneys of record. This never occurred, and neither party's attorney received notice of the September 13, 2005, order. Pursuant to Supreme Court Rule 272 (137 Ill. 2d R. 272), the judgment dismissing the amended complaint became final when it was entered of record on September 13, 2005, and the time for the filing of a notice of appeal began to run on that day. Therefore, Jennifer had 30 days from September 13, 2005, to file a notice of appeal, and she had an additional 30 days to file a motion for extension of time to file a notice of appeal under Supreme Court Rule 303(d) (210 Ill. 2d R. 303(d)). She did neither because she did not know of the existence of the adverse judgment. Herrin, therefore, cites *Granite City Lodge No. 272, Loyal Order of the Moose v. City of Granite City*, 141 Ill. 2d 122, 565

N.E.2d 929 (1990), and argues that we lack jurisdiction to hear Jennifer's appeal of the dismissal of the amended complaint.

In *Granite City Lodge*, the Illinois Supreme Court held that the time period for filing a notice of appeal is not tolled because the parties failed to receive actual notice of an order disposing of a posttrial motion. *Granite City Lodge*, 141 Ill. 2d at 126-27, 565 N.E.2d at 931. The court held that actual notice to the parties is not required, so long as the order appealed from is expressed publicly, in words, and at the situs of the proceeding. *Granite City Lodge*, 141 Ill. 2d at 127, 565 N.E.2d at 931.

We find *Granite City Lodge* distinguishable from the present case because Jennifer did not appeal the September 13, 2005, dismissal order. Instead, Jennifer's attorney filed a motion requesting relief from the final judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)). On August 25, 2006, the circuit court granted Jennifer's section 2-1401 petition, but the court subsequently, albeit in the same order, dismissed the amended complaint after considering the new evidence presented in Jennifer's response to the motion to dismiss the amended complaint. Jennifer's appeal from the August 25, 2006, order requires a different analysis than the analysis set forth in *Granite City Lodge* because *Granite City Lodge* did not involve an appeal following proceedings on a section 2-1401 petition.

Section 2-1401 provides a comprehensive statutory procedure by which a judgment may be vacated more than 30 days after the entry of the judgment. 735 ILCS 5/2-1401 (West 2006); *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 776 N.E.2d 195 (2002). A section 2-1401 petition, "although filed in the same proceeding, is the commencement of a new cause of action and is not a continuation of the proceeding in which the prior judgment was entered." *Childers v. Kruse*, 297 Ill. App. 3d 70, 77, 696 N.E.2d 1253, 1258 (1998). The purpose of a section 2-1401 petition is to bring before the

7

court matters of fact not appearing in the record, which if known to the court at the time the judgment was entered would have prevented the judgment's entry. *Cartwright v. Goodyear Tire & Rubber Co.*, 279 Ill. App. 3d 874, 882, 665 N.E.2d 365, 371 (1996). A section 2-1401 petition must set forth a meritorious claim or defense and the petitioner's due diligence in both presenting the claim or defense and filing the petition. *Klein v. La Salle National Bank*, 155 Ill. 2d 201, 205, 613 N.E.2d 737, 739 (1993). An order granting or denying a section 2-1401 petition is a final and appealable order. *Sarkissian*, 201 Ill. 2d at 102, 776 N.E.2d at 200; 210 Ill. 2d R. 304(b)(3). "[A]n appeal from the [grant or] denial of a section 2-1401 petition is a proceeding wholly separate from an appeal from the original judgment." *Childers*, 297 Ill. App. 3d at 77, 696 N.E.2d at 1258.

Herrin asserts that a section 2-1401 petition may not be used to extend the time for filing an appeal, and it cites *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 632 N.E.2d 1010 (1994), in support of its argument that this court has no jurisdiction in this appeal. We find *Mitchell* distinguishable from the present case. In *Mitchell*, the employer filed in the circuit court a complaint for the administrative review of an Industrial Commission decision that was favorable to the claimant. The circuit court entered a final order setting aside the order of the Industrial Commission, but the parties were never notified that the order had been entered. The claimant learned of the entry of the order more than 30 days after it had been entered. When the circuit court learned that the parties had not been notified of the order, it directed the claimant to file a section 2-1401 petition. *Mitchell*, 158 Ill. 2d at 147, 632 N.E.2d at 1011. The court subsequently granted the petition and then reentered the same judgment. *Mitchell*, 158 Ill. 2d at 147, 632 N.E.2d at 1011. The claimant appealed from the judgment that had been reentered, and the employer cross-appealed from the circuit court's decision granting the section 2-1401 petition. *Mitchell*, 158 Ill. 2d at 147, 632 N.E.2d at 1011. The appellate court determined that it had jurisdiction of the claimant's appeal.

8

The supreme court held that the appellate court lacked jurisdiction over the appeal from the reentered judgment because the circuit court erred in granting the claimant's section 2-1401 petition. *Mitchell*, 158 Ill. 2d at 148-49, 632 N.E.2d at 1012. The *Mitchell* court reasoned that even though counsel for the appellant had not received actual notice of the entry of the judgment, counsel was required to monitor the progress of the case to ensure that appeals were timely filed. *Mitchell*, 158 Ill. 2d at 150, 632 N.E.2d at 1013. The court held that the failure of a party to receive notice of the entry of a final order is not a sufficient ground to vacate the order under section 2-1401. *Mitchell*, 158 Ill. 2d at 149, 632 N.E.2d at 1012. Likewise, the court held that relief under section 2-1401 is inappropriate where the party seeking relief is simply requesting that the same order be reentered in order to restart the time to file a notice of appeal. *Mitchell*, 158 Ill. 2d at 149, 632 N.E.2d at 1012.

The present case is distinguishable from *Mitchell* in two important respects. First, in *Mitchell*, the sole basis of the section 2-1401 petition was the lack of notice of the entry of the judgment, and apparently the petition merely requested a reentry of the same judgment. *Mitchell*, 158 Ill. 2d at 149, 632 N.E.2d at 1012. Second, in *Mitchell*, the employer filed a cross-appeal from the decision of the circuit court granting the section 2-1401 petition. *Mitchell*, 158 Ill. 2d at 147, 632 N.E.2d at 1011.

Jennifer's section 2-1401 petition did not simply request the circuit court to reenter the same dismissal order to restart her appeal clock; instead, she presented the circuit court with new evidence (deposition testimony of Officer Laird) of which the court had no knowledge when it entered its first dismissal order. Jennifer was not seeking the reentry of the same order. She was urging the court to deny the defendant's motion to dismiss. A section 2-1401 petition is the proper mechanism for bringing this additional evidence to the circuit court's attention. The very purpose of section 2-1401 is to allow parties to bring before the trial court facts that do not appear on the record (*Sakun v. Taffer*, 268 Ill. App.

9

3d 343, 352, 643 N.E.2d 1271, 1278 (1994)), and these motions must be decided "within the framework of the legal philosophy that litigation should, if possible, be determined on the merits according to the substantive rights of the parties" (*Robinson v. Commonwealth Edison Co.*, 238 Ill. App. 3d 436, 441, 606 N.E.2d 615, 618 (1992)). Jennifer's section 2-1401 petition was not filed merely as a subterfuge to extend the time requirement of Rule 303(a). Nothing in *Mitchell* suggests that a litigant, aggrieved by an adverse ruling of which she received no notice, may not pursue a legitimate section 2-1401 petition, based upon evidence not appearing of record, in order to persuade the court to vacate the earlier order.

Although the *Mitchell* court described its own ruling as appearing to be a "harsh result" (*Mitchell*, 158 Ill. 2d at 151, 632 N.E.2d at 1013), the *Mitchell* decision is completely consistent with Illinois cases which have long held that a litigant is obligated to monitor his case and that section 2-1401 may not be used to relieve a litigant of his own negligence or mistakes or those of his trial counsel (*e.g.*, *Esczuk v. Chicago Transit Authority*, 39 Ill. 2d 464, 236 N.E.2d 719 (1968)). It must be remembered that, in *Mitchell*, the supreme court reversed the appellate court decision affirming the trial court's grant of the claimant's section 2-1401 petition. Thus, *Mitchell* simply stands for the proposition that an allegation of a lack of notice, standing alone, is insufficient to justify relief under section 2-1401.

Because of the second distinction between this case and *Mitchell*, however, we need not, and may not, determine the sufficiency of Jennifer's section 2-1401 petition in this appeal. The August 25, 2006, docket entry from which Jennifer appealed contained two separate orders in two separate and distinct proceedings. First, it granted Jennifer's section 2-1401 petition, as a result of which the September 13, 2005, judgment was vacated and Jennifer's underlying lawsuit was reinstated. Second, it dismissed Jennifer's amended complaint. Jennifer only appealed the dismissal of her amended complaint. Herrin filed no appeal or cross-appeal from the circuit court's order granting Jennifer's section 2-1401

10

petition. Accordingly, we have no jurisdiction to determine whether the circuit court was correct in vacating its previous order.[2]

In *Granite City Lodge* and *Mitchell* the supreme court made it clear that we should protect our jurisdiction and that once a litigant's time to appeal or file a late notice of appeal has expired, a lack of notice of the entry of a final judgment is insufficient grounds to extend the time for filing a notice of appeal or to vacate the judgment under section 2-1401. We see no reason to be any less protective of our jurisdiction when a party fails to perfect an appeal from a section 2-1401 ruling of which it has notice than we would be when a party fails to appeal a final judgment of which she is not notified. Here, the circuit court entered an order vacating its previous judgment, thereby reinstating Jennifer's cause of action. Herrin chose not to appeal that order. It was only upon this court's order that the issue of jurisdiction was raised in this case. Having fully reviewed the record, we find that we are without jurisdiction to review the circuit court's August 25, 2006, order granting Jennifer's section 2-1401 petition. We further find that Jennifer has properly perfected her appeal from the circuit court's August 25, 2006, order dismissing her amended complaint. Accordingly, we will proceed to determine the merits of Jennifer's appeal.

Jennifer's amended complaint alleged five counts against Herrin. Counts I and II alleged negligence, counts III and IV alleged wilful and wanton conduct, and count V alleged the special-duty exception to the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2006)). The

---

[2] We reject the decision of the Fourth District in *In re K.A.*, 335 Ill. App. 3d 1095, 1099, 782 N.E.2d 937, 940 (2003), a case that resulted in each member of the panel writing a separate opinion. The majority in that case treated the failure to cross-appeal from the grant of a section 2-1401 petition as a matter of waiver, rather than jurisdiction.

11

circuit court dismissed Jennifer's amended complaint, and she appeals that ruling. For the reasons explained below, we hold that the circuit court ruled correctly in dismissing the counts that alleged negligence and special duty, but we hold that the circuit court erred in dismissing the counts that alleged wilful and wanton conduct.

Under the common law in Illinois, a governmental body was absolutely immune from all tort liability. "The original basis of [this] immunity rule has been called a 'survival of the medieval idea that the sovereign can do no wrong,' or that 'the King can do no wrong.' (38 Am. Jur., Mun. Corps., sec. 573, p. 266.)" *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11, 20, 163 N.E.2d 89, 93 (1959). In *Molitor*, the Illinois Supreme Court abolished this doctrine of sovereign immunity. *Molitor*, 18 Ill. 2d at 21-22, 163 N.E.2d at 94. In response to *Molitor*, however, the legislature passed the Tort Immunity Act in 1965 (Ill. Rev. Stat. 1965, ch. 85, par. 1-101 *et seq.* (now 745 ILCS 10/1-101 *et seq.* (West 2006))), and the act restored immunity for governmental entities in certain circumstances. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 43, 697 N.E.2d 699, 707 (1998). After the passage of the Tort Immunity Act, article XIII, section 4, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, §4) also abolished sovereign immunity and made the legislature the ultimate authority to determine under what circumstances units of local government would be immune from tort liability. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 506, 848 N.E.2d 1030, 1036 (2006).

Accordingly, since the abolishment of sovereign immunity in Illinois, a unit of local government is liable in tort to the same extent as a private party unless an immunity established by the legislature in the Tort Immunity Act applies. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368-69, 799 N.E.2d 273, 279 (2003). The Tort Immunity Act does not establish any new duties for governmental entities but "merely codifies those duties existing at common law, to which the subsequently delineated immunities apply." *Barnett*

12

*v. Zion Park District*, 171 Ill. 2d 378, 386, 665 N.E.2d 808, 812 (1996). Because the Tort Immunity Act "was enacted in derogation of the common law, it must be strictly construed." *Van Meter*, 207 Ill. 2d at 368, 799 N.E.2d at 279.

The immunities established in the Tort Immunity Act operate as affirmative defenses, and the governmental entity bears the burden of properly raising and proving its immunity under the act. *Van Meter*, 207 Ill. 2d at 370, 799 N.E.2d at 280. Section 2-619(a)(9) of the Code of Civil Procedure permits an involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2006). Immunity under the Tort Immunity Act is an affirmative matter properly raised in a motion to dismiss filed pursuant to section 2-619(a)(9) of the Code of Civil Procedure. *Van Meter*, 207 Ill. 2d at 367, 799 N.E.2d at 278.

When a court rules on a section 2-619 motion to dismiss, it "must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189, 680 N.E.2d 265, 270 (1997). "The moving party thus admits the legal sufficiency of the complaint[] but asserts an affirmative defense or other matter to defeat the plaintiff's claim." *Van Meter*, 207 Ill. 2d at 367, 799 N.E.2d at 278. Our review of a section 2-619 dismissal is *de novo*. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383, 687 N.E.2d 1042, 1049 (1997).

In the present case, the pleadings and supporting documents interpreted in the light most favorable to Jennifer establish that Officer Laird of the Herrin police department arrested Chelsea for underage consumption of alcohol at approximately 3:30 a.m. on August 9, 2003, and she had a blood-alcohol level of 0.18 at the time of her arrest. Chelsea had enough money to post bond, but Officer Laird agreed to let Chelsea sign a personal recognizance bond if she would arrange for a sober person to pick her up at the police station. Chelsea contacted an adult by telephone, and the adult spoke with Officer Laird and

informed him that she would arrive shortly to pick up Chelsea at the police department. However, at approximately 4:40 a.m., before Chelsea's ride arrived, Herrin's police officers allowed Chelsea to leave the police department on her own, unattended, and intoxicated. At approximately 5 a.m., while walking along a public street in Herrin, Chelsea was struck and killed by a vehicle.

Jennifer's complaint alleged that Herrin is liable in tort for Chelsea's death, and we must determine whether Herrin is entitled to immunity under the applicable provisions of the Tort Immunity Act. Herrin argues that it is entitled to absolute immunity pursuant to sections 4-102 and 4-107 of the Tort Immunity Act (745 ILCS 10/4-102, 4-107 (West 2006)).

Section 4-102 of the Tort Immunity Act provides, in pertinent part, "Neither a local public entity nor a public employee is liable ***, if police protection service is provided, for failure to provide adequate police protection or service ***." 745 ILCS 10/4-102 (West 2006). This section provides absolute immunity, and "when the applicable provisions of the Tort Immunity Act provide absolute immunity, the plaintiff's claim is barred." *Moore v. Green*, 219 Ill. 2d 470, 478, 848 N.E.2d 1015, 1020 (2006). Section 4-102's language immunizes both negligent and wilful and wanton conduct. *Hernandez v. Kirksey*, 306 Ill. App. 3d 912, 915, 715 N.E.2d 669, 672 (1999). Likewise, section 4-107 of the Tort Immunity Act provides, "Neither a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest or by releasing a person in custody." 745 ILCS 10/4-107 (West 2006). This section also provides absolute immunity. *Moore*, 219 Ill. 2d at 478, 848 N.E.2d at 1020.

However, section 2-202 of the Tort Immunity Act (745 ILCS 10/2-202 (West 2006)) limits absolute immunity under certain circumstances. Section 2-202 provides, "A public employee is not liable for his act or omission in the execution or enforcement of any law

14

*unless such act or omission constitutes willful and wanton conduct*." (Emphasis added.) 745 ILCS 10/2-202 (West 2006). Accordingly, we are confronted with an issue of statutory construction to determine whether absolute immunity provided in sections 4-102 and 4-107 or limited immunity provided in section 2-202 applies to Jennifer's claim.

"The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent." *Moore*, 219 Ill. 2d at 479, 848 N.E.2d at 1020. Generally, the plain meaning of the statute is the best indication of the legislature's intent, but when the plain language of one statute apparently conflicts with the plain language of another statute, we will attempt to construe them together, *in pari materia*, where that interpretation is reasonable. *Moore*, 219 Ill. 2d at 479, 848 N.E.2d at 1020-21. The plain language of sections 4-102 and 4-107 of the Tort Immunity Act provides blanket immunity in general to police services, but the plain language of section 2-202 carves out a wilful-and-wanton exception to this blanket immunity in limited circumstances.

In *Doe v. Calumet City*, 161 Ill. 2d 374, 389-90, 641 N.E.2d 498, 505 (1994), the Illinois Supreme Court held that there are two exceptions to the absolute immunity provided under sections 4-102 and 4-107: (1) the special-duty exception to the Tort Immunity Act and (2) wilful and wanton conduct in the execution or enforcement of law provided in section 2-202 of the Tort Immunity Act. In *Doe*, a police officer took control of a crime scene, and the officer prevented rescuers from entering an apartment where an intruder was raping a young girl and threatening her younger brother. *Doe*, 161 Ill. 2d at 382-83, 641 N.E.2d at 502. The court held that under the facts of that case, section 2-202 immunity applied to the plaintiffs' claim against one of the officers at the scene and against his municipal employer because the officer was executing and enforcing the law when he took control of the entire crime scene. *Doe*, 161 Ill. 2d at 390-91, 641 N.E.2d at 505-06. The court held that the plaintiffs could maintain an action against the police officer based on wilful and wanton acts

15

or omissions in the officer's execution or enforcement of the laws pursuant to section 2-202 of the Tort Immunity Act. *Doe*, 161 Ill. 2d at 390-91, 641 N.E.2d at 505-06.

In *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 50, 697 N.E.2d 699, 710 (1998), the supreme court held that the special-duty exception to the Tort Immunity Act violated the Illinois Constitution's provisions governing sovereign immunity (Ill. Const. 1970, art. XIII, §4) as well as the separation of powers (Ill. Const. 1970, art. II, §1). The court did not, however, abrogate the wilful-and-wanton exception to absolute immunity provided in section 2-202 as discussed in *Doe*. Accordingly, after *Zimmerman*, a plaintiff cannot "escape the statutory immunities granted [to] municipalities" by "proving facts that show the existence of a special duty." *Doe*, 161 Ill. 2d at 390, 641 N.E.2d at 505. However, a plaintiff can escape absolute immunity by "proving willful and wanton conduct" in the execution or enforcement of any law. *Doe*, 161 Ill. 2d at 390, 641 N.E.2d at 505.

We also note that in addition to the wilful-and-wanton exception provided in section 2-202 of the Tort Immunity Act, the Illinois Supreme Court has also found a wilful-and-wanton exception to absolute immunity in section 305 of the Illinois Domestic Violence Act of 1986 (750 ILCS 60/305 (West 2006)). See *Moore v. Green*, 219 Ill. 2d 470, 489-90, 848 N.E.2d 1015, 1026-27 (2006).

Since we hold that section 2-202 of the Tort Immunity Act (745 ILCS 10/2-202 (West 2006)) establishes a wilful-and-wanton exception to blanket immunity, we must determine whether Jennifer's claim falls within the plain language of that section. Under section 2-202's plain language, its applicability depends on the nature of the alleged governmental activity. Section 2-202 provides that municipalities are not shielded from liability for wilful and wanton acts or omissions "in the execution or enforcement of any law." 745 ILCS 10/2-202 (West 2006). Accordingly, we must determine whether Jennifer's complaint alleges acts or omissions on the part of Herrin in executing or enforcing any law.

16

In *Fatigato v. Village of Olympia Fields*, 281 Ill. App. 3d 347, 352, 666 N.E.2d 732, 736 (1996), two police officers responded to a domestic disturbance. The officers told a highly intoxicated man to leave his home, and they permitted him to drive away in his vehicle. Shortly after he left, the intoxicated driver crossed the median of an interstate and collided head-on with another vehicle. *Fatigato*, 281 Ill. App. 3d at 352, 666 N.E.2d at 736. The intoxicated driver was killed, and the occupants in the oncoming vehicle were seriously injured. *Fatigato*, 281 Ill. App. 3d at 352, 666 N.E.2d at 736. The injured motorists brought a lawsuit against the police officers and the village which employed the police officers, alleging that they were liable for wilful and wanton conduct when the officers directed the intoxicated man to leave his home and allowed him to drive while intoxicated. *Fatigato*, 281 Ill. App. 3d at 348, 666 N.E.2d at 734. The *Fatigato* court reversed the trial court's summary judgment in favor of the defendants and held that under the facts of that case, the officers and the village could be held liable for injuries proximately caused by wilful and wanton conduct in the enforcement and execution of the law pursuant to section 2-202 of the Tort Immunity Act. *Fatigato*, 281 Ill. App. 3d at 356-57, 666 N.E.2d at 739.

Likewise, in *Ozik v. Gramins*, 345 Ill. App. 3d 502, 515, 799 N.E.2d 871, 882 (2003), the court found that the immunity contained in section 2-202 of the Tort Immunity Act applied where village police officers stopped a drunk driver and issued him citations but allowed him to drive away. The complaint alleged that the officers knew or should have known that the driver was both underage and intoxicated. After the officers let him drive away, the driver had an accident that killed his passenger. *Ozik*, 345 Ill. App. 3d at 504, 799 N.E.2d at 873.

We find the facts of the present case to be comparable to *Fatigato* and *Ozik*, and we hold that section 2-202 immunity applies to Jennifer's claim. Similar to the police officers in *Fatigato* and *Ozik*, Herrin's police officer responded to a situation involving an

17

intoxicated person. The Herrin police officer arrested Chelsea for underage consumption of alcohol, and he was executing and enforcing the law when he took her into his custody. At that point, Herrin's police department owed Chelsea a duty not to engage in wilful and wanton conduct. In *Fatigato* and *Ozik*, the police officers exercised control at the scene but allowed intoxicated drivers to leave their control by allowing the intoxicated drivers to drive away in vehicles. The intoxicated drivers subsequently caused injuries or death to others. In the present case, Herrin's police officers had similar control over Chelsea after her arrest, but the officers allowed Chelsea, an intoxicated pedestrian, to leave the police station unsupervised. A short time later, a vehicle struck and killed her while she walked the streets of Herrin. The same principles outlined in *Fatigato* and in *Ozik* apply in the present case. Jennifer alleged that Chelsea's death resulted from Herrin's wilful and wanton act of releasing control over an intoxicated pedestrian onto Herrin's streets, unsupervised and without a ride from a responsible adult. Jennifer's allegations, viewed in the light most favorable to her, create triable issues of fact concerning Herrin's liability for wilful and wanton acts.

Herrin cites *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 848 N.E.2d 1030 (2006), in support of its argument, but we find *DeSmet* supports our holding that the circuit court erred in dismissing the wilful-and-wanton counts. In *DeSmet*, a caller reported seeing a vehicle that had been traveling at a high rate of speed leave the roadway and run into a ditch; no one from the defendant's police department responded to the accident, and the driver died. *DeSmet*, 219 Ill. 2d at 500-02, 848 N.E.2d at 1034-35. The driver's estate filed a lawsuit against the county and alleged wilful and wanton conduct for failing to send any assistance. *DeSmet*, 219 Ill. 2d at 502, 848 N.E.2d at 1035. The *DeSmet* court held that the county was entitled to blanket immunity under section 4-102 of the Tort Immunity Act because the plaintiff's allegations fell under the statutory umbrella of police protection

services contained in section 4-102. *DeSmet*, 219 Ill. 2d at 512, 848 N.E.2d at 1040.

The *DeSmet* court held that section 2-202 of the Tort Immunity Act did not apply under the facts of that case because the police had not responded to the scene. *DeSmet*, 219 Ill. 2d at 520, 848 N.E.2d at 1045 ("the police in this case did not respond at all"). The court emphasized the importance of police "control" as a requirement for section 2-202 immunity: "When an officer does respond to a call, *** he or she exercises a degree of control over the situation and may well alter the circumstances at the scene for better–or worse." *DeSmet*, 219 Ill. 2d at 521, 848 N.E.2d at 1045. Under those circumstances, the legislature intended for police officers to have immunity for negligence, but not for wilful and wanton acts. *DeSmet*, 219 Ill. 2d at 520, 848 N.E.2d at 1045. Accordingly, in *DeSmet*, because the officers did not respond at all and did not exercise any control, the court applied section 4-102 of the Tort Immunity Act since the status quo was "not altered to the detriment of those present." *DeSmet*, 219 Ill. 2d at 521, 848 N.E.2d at 1045.

The present case is distinguishable from the facts in *DeSmet* because a Herrin police officer did respond and arrested Chelsea for underage consumption of alcohol. By doing so, the officer altered Chelsea's situation, and Herrin then owed Chelsea a duty not to engage in wilful and wanton acts. *DeSmet*, 219 Ill. 2d at 521, 848 N.E.2d at 1045. Accordingly, under the reasoning set forth in *DeSmet*, section 2-202 immunity applies to Jennifer's claim, rather than the blanket immunity provided in sections 4-102 and 4-107 of the Tort Immunity Act.

We hold that the circuit court erred in granting Herrin's motion to dismiss counts III and IV of the amended complaint that alleged that Chelsea's death resulted from Herrin's wilful and wanton conduct. Herrin is not entitled to blanket immunity with respect to those counts, and we remand for a jury to determine the issues raised in those claims. We affirm the circuit court's dismissal of counts I, II, and V. Counts I and II alleged negligence, and

19

Herrin is entitled to immunity under the Tort Immunity Act for Jennifer's allegations based on a negligence theory (745 ILCS 10/2-202 (West 2006)). Count V of the amended complaint alleged the special-duty exception to the Tort Immunity Act. The circuit court properly dismissed count V because the supreme court has determined that the special-duty exception to the Tort Immunity Act violates the Illinois Constitution's provisions governing sovereign immunity (Ill. Const. 1970, art. XIII, §4) as well as the separation of powers (Ill. Const. 1970, art. II, §1). *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 50, 697 N.E.2d 699, 710 (1998).

## CONCLUSION

For the foregoing reasons, we reverse the order of the circuit court of Williamson County granting Herrin's motion to dismiss counts III and IV of the amended complaint and remand for further proceedings on those counts. We affirm the circuit court's order granting the motion to dismiss counts I, II, and V of the amended complaint.


Affirmed in part and reversed in part; cause remanded.


CHAPMAN and WEXSTTEN, JJ., concur.

NO. 5-06-0501

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| JENNIFER KEENER, Individually and as Administrator of the Estate of Chelsea Keener, Deceased, | ) ) ) ) | Appeal from the Circuit Court of Williamson County. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | No. 04-L-146 |
| THE CITY OF HERRIN, | ) ) ) | Honorable Ronald R. Eckiss, |
| Defendant-Appellee. | ) ) | Judge, presiding. |

**Opinion Filed**:          October 6, 2008

**Justices**:          Honorable Bruce D. Stewart, P.J.

Honorable Melissa A. Chapman, J.,
Honorable James M. Wexstten, J.,
Concur

**Attorney for Appellant**          Mark D. Prince, Prince Law Firm, 204 West College, P.O. Box 1030, Carbondale, IL 62903

**Attorney for Appellee**          Joseph A. Bleyer, Bleyer and Bleyer, 601 West Jackson Street, P.O. Box 487, Marion, IL 62959-0487